UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| DEVIN KEITT, 06-A-2122, | **REPORT, RECOMMENDATION, ORDER** |
| Plaintiff, | |
| v. | 11-CV-00438(A)(M) |
| A. SCHUN, et al., | |
| Defendants. | |

_____

This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including preparation of a Report and Recommendation on dispositive motions [18].[1] Before me is defendants' unopposed motion [39] to dismiss the Amended Complaint pursuant to 28 U.S.C. §1915A and Fed. R. Civ. P. ("Rules") 12 (b)(1), (2), and (6), and for a stay of all proceedings pending resolution of the motion.[2] For the following reasons, I recommend that the motion to dimiss be granted in part and denied in part, and order that the motion for a stay is granted.

**BACKGROUND**

Plaintiff, an inmate in the custody of the New York State Department of Correction and Community Supervision ("DOCCS") commenced this action *pro se* by Complaint filed May 20, 2011 [1]. Defendants initially moved to dismiss the Complaint [14], and plaintiff responded by cross-moving [21] for leave to file an Amended Complaint seeking to

---

[1]  Bracketed references are to the CM/ECF docket entries.

[2]  Although defendants move to dismiss the Amended Complaint [29] pursuant to Rules 12(b)(1) and (b)(2), they do not argue that either subject-matter or personal jurisdiction are lacking.

add two new defendants. At a conference held on July 5, 2012, I denied plaintiff's motion for leave to amend [21] "as moot, since plaintiff [could] amend as of right", and defendants' motion to dismiss the Complaint [14] was withdrawn, without prejudice to their right to move against the Amended Complaint. July 6, 2012 Text Order [28]. Plaintiff filed an Amended Complaint [29] on July 11, 2012.

Plaintiff's Amended Complaint centers on the medical treatment he received while incarcerated at Attica Correctional Facility. According to plaintiff, a bullet is lodged in his head, causing him to suffer "chronic" and "substantial pain" that hinders his ability to sleep or engage in physical activity. Amended Complaint [29], ¶¶17, 19. A pain management specialist who treated plaintiff in December of 2004 for his complaints that Tylenol and Motrin were causing gastrointestinal distress, including "blood in [his] underwear" (id., ¶20), prescribed certain pain relievers, including Ultracet, "Morin", Neurontin, and Pepcid. Id. ¶21, p. 33 of 43. At the two facilities where he was housed prior to being transferred to Attica, plaintiff was prescribed the recommended medications. Id., ¶¶22-23.

However, when he arrived at Attica on October 19, 2010, plaintiff was examined by defendant Schunh,[3] a "medical provider", who informed him that she was "not going to give pain medication for migraine headache" and was "withdraw[ing] [the] treatment that was prescribed by [the] pain management [specialist]". Id., ¶24.[4] Instead, she offered him Tylenol and Motrin, despite "being aware that . . . [it] causes [him] '<u>distress</u>'". Id., ¶37 (emphasis in

---

[3] Whereas the Amended Complaint identifies this individual as "Schun", it's spelled "Schunh" by defendants.

[4] Where the full names of the defendants are not contained in the record, I have identified them by their surnames.

original).  When plaintiff requested a second opinion, defendant Schunh told him that "she doesn't care who else Plaintiff speaks to about issue . . . . [S]he's going to make sure as long as plaintiff is in the facility, none of her co-workers is going to go against her". Id., ¶26.

Plaintiff repeats these allegations against several doctors at Attica, including Dr. Evans, who examined him on November 19, 2010 (id., ¶41), Jadow Rao, M.D., who examined him on December 9, 2010 (id., ¶64), and Dr. Kowski, who examined him on December 1, 2011 (id., ¶83).  He also alleges that he informed defendants Nurse Administrator Killinger, Superintendent Mark Bradt, and DOCCS's Commissioner Brian Fischer, that he was intentionally being denied treatment that was prescribed by a pain management specialist, but that they failed to remedy the wrong.  Id., ¶¶101-108, 115, 122-132, 137-154.

Plaintiff alleges that he was denied pain medication "because of the color of his skin" (id., ¶30), and as a penalty for "exercising the right of free speech" (id., ¶¶32, 48, 75, 94, 108, 126, 155).  He alleges that he "is a member of racial minority[.]  The defendant intended to discriminate on the basis of race[.]  This discrimination concerned the rights to make and enforce contacts to sue both parties; give evidence and the full [*sic*] and equal benefits of all laws and proceedings for security of persons and property." Id., ¶¶56, 74, 93, 107, 127, 154.  He also alleges that defendants "carried out a malicious retaliation against [him] because of the color of his skin. Id., ¶¶73, 92, 106, 125, 153.  According to plaintiff, defendants collectively

> "conspired to deprive [him] of the equal protection of the laws or privileges and immunities under the laws with avert act in furtherances [*sic*] of the conspiracy and injury to the privilege of a citizen of the United States; some racial or perhaps otherwise class-based, invious [*sic*] discriminatory animus." Id., ¶¶31, 60, 79, 105.

Plaintiff's action is brought pursuant to "42 U.S.C. §1981, 1983, 1985, 1986, 1988, civil rights first, eighth, fourteenth amendment, Discrimination, deliberate indifference, equal protection, failure to protect, and due process, cruel and unusual punishment." Id., ¶1.[5] Each of the defendants are named in their individual and official capacities (id., ¶¶16, 40, 63, 82, 100, 122, 137), and plaintiff seeks compensatory and punitive damages (id., ¶157).

After defendants filed this motion, I appointed Attorney James Greco to represent plaintiff and set a briefing schedule on the motion to dismiss, giving plaintiff until November 30, 2012 to respond. October 3, 2012 Text Order [44]. To date, no response or motion for an extension of the November 30, 2012 deadline has been filed. Nevertheless, I "cannot grant a motion to dismiss solely on the ground that it is unopposed. Rather, where a Rule 12(b) motion has not been opposed, this Court must review the merits of the motion and determine whether the movant has carried its burden." Foster v. Phillips, 2005 WL 2978686, *3 (S.D.N.Y. 2005). *See* McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal").[6]

---

[5] Plaintiff's "Section 1988 claim for attorney's fees . . . fails because the statute is not an independent cause of action". Reid v. Toyota Motor Credit Corp., 2013 WL 3776201, *2 (S.D.N.Y. 2013).

[6] Under 28 U.S.C. §1915A(a), a district court "shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and it "shall" dismiss the complaint (or any portion thereof) if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. §1915A(b)(1). Since "Section 1915A's third ground for dismissal—legal sufficiency—is identical to the dismissal standard under Federal Rule of Civil Procedure 12(b)(6)" McGhie v. Main, 2011 WL 4852268, *1 (E.D.N.Y. 2011), I have addressed defendants' motion only under the Rule 12(b)(6) standard.

## ANALYSIS

A.    **Motion to Dismiss**

    1.    **42 U.S.C. §1981**

Defendants argue that plaintiff's 42 U.S.C. §1981 claim must be dismissed because plaintiff "fails to allege any contract right . . . nor of any infringement on his ability to give evidence, nor of a causal link between the defendants' actions and the plaintiff's race." Defendants' Memorandum of Law [40], p. 10. I agree.

42 U.S.C. §1981 provides that "[a]ll persons . . . shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens". 42 U.S.C. §1981(a). "The essential elements of the claim are actions that were racially motivated and purposefully discriminatory." Dove v. Fordham University, 56 F.Supp.2d 330, 338 (S.D.N.Y. 1999), aff'd, 210 F.3d 354 (2d Cir. 2000) (Summary Order). In pleading a claim arising under §1981, "[c]onclusory or naked allegations will not suffice . . . . Fact-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." Id.

Plaintiff's conclusory allegations parroting the language of §1981, which fail to include fact-specific conduct linking defendants' alleged deliberate indifference to his race, are insufficient to state a claim. Coupled with the absence of specific facts supporting his claim that defendants' conduct was racially motivated, plaintiff offers other reasons for the conduct that he experienced, including retaliation, and is equivocal as to whether this conduct was motivated by race, alleging that "some racial or perhaps otherwise class-based, invious [*sic*] discriminatory

animus" was to blame. Amended Complaint [29], ¶¶31, 60, 79, 105.[7] Since "a complaint that sets forth other possible motives for the alleged conduct, and does not contain specific facts supporting a claim of racial animus, contradicts a claim of racial discrimination", Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, 2013 WL 417406, *9 (S.D.N.Y. 2013), I recommend that this claim be dismissed.

2. **Equal Protection**

Defendants argue that plaintiff's conclusory allegations of racial discrimination likewise fail to state an equal protection claim. Defendants' Memorandum of Law [40], pp. 10-11. I agree.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). "In order to plead a facially valid equal protection claim, however, plaintiff must allege: (1) that he has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right." Nash v. McGinnis, 585 F.Supp.2d 455, 462

---

[7] Although not raised by defendants, it is questionable whether plaintiff's §1981 claim is viable in its current form. "Plaintiff cannot assert a claim under 42 U.S.C. §1981 because 42 U.S.C. §1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by §1981 when the claim is pressed against a state actor . . . . Defendants here are state actors. Therefore, Plaintiff's claims cannot be raised under 42 U.S .C. §1981." Hughes v. Butt, 2009 WL 3122952, * 11 (N.D.N.Y. 2009) (*citing* Jett v. Dallas Independent School District, 491 U.S. 701, 735 (1989)). *See* Wynder v. McMahon, 2013 WL 1759968, *5 (E.D.N.Y. 2013) ("When a plaintiff alleges §1981 and §1983 claims for the same conduct, a court may dismiss the §1981 claim or deem it merged with the §1983 claim; the result, in practice, is the same"). "Courts have interpreted this prohibition to extend to actions against individual defendants in their individual capacities." Rehman v. State University of New York at Stony Brook, 596 F.Supp.2d 643, 654 (E.D.N.Y. 2009).

(W.D.N.Y. 2008) (Larimer, J.). "Conclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient." Id.

Here, plaintiff only sets forth conclusory allegations of discriminatory intent. He also fails to allege that he was treated differently from other similarly situated inmates. Therefore, I recommend that this claim be dismissed.

### 3. Conspiracy

Defendants argue that this claim must be dismissed because the Amended Complaint "is devoid of any factual allegations that plausibly suggest a meeting of the minds or agreement between any of the defendants". Defendants' Memorandum of Law [40], p. 15. I agree.

"In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003), cert. denied, 540 U.S. 1110 (2004).[8] "To survive a motion to dismiss, plaintiff must include some facts in his complaint tending to show that defendants acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated his rights, privileges, or immunities secured by the Constitution or federal courts." McLaurin v. New Rochelle Police Officers, 368 F.Supp.2d 289, 295 (S.D.N.Y. 2005). At best, plaintiff alleges that Schuh stated that her co-workers would not "go against her". Amended Complaint [29], ¶26.

---

[8] "The plaintiffs' [conspiracy] claim under 42 U.S.C. § 1983, . . . should actually be stated as a claim under Section 1985, which applies specifically to conspiracies." Webb, 340 F.3d at 110.

However, he has "not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants." Webb, 340 F.3d at 111.

"As for the §1986 claim, no such claim lies unless there is a viable conspiracy claim under §1985." Abdi v. Brookhaven Science Associates, LLC, 447 F.Supp.2d 221, 227 (E.D.N.Y. 2006). Therefore, I recommend that plaintiff's §§1985 and 1986 conspiracy claims be dismissed.

### 4. Retaliation

Defendants argue that this claim is "nonsensical" since his grievance, which was filed *after* the termination of his pain medication, could not have prompted the decision to terminate his pain medication. Defendants' Memorandum of Law [40], p. 17.[9] I agree. To establish retaliation, "the plaintiff must prove that the alleged retaliatory action would not have been taken but for his having exercised his constitutional rights." Andino v. Fischer, 698 F.Supp.2d 362, 382 (S.D.N.Y. 2010). Here, the challenged action occurred prior to his grievance, so it clearly could not have been taken in response to his grievance.[10] Although plaintiff's claim against defendant Schunh is also premised on her retaliation arising from his request for a second opinion (Amended Complaint [29], ¶32), this too, occurred after she had decided to terminate his pain medications. Therefore, I recommend that this claim be dismissed.

---

[9] It appears that plaintiff's grievance was not filed until December 16, 2010. Amended Complaint [29], p. 31 of 43. This was after he was seen by Schunh, Dr. Evans and Dr. Rao.

[10] If plaintiff's claim is that defendants continued to deprive him of pain medication after he filed his grievance in retaliation for that grievance, that is not evident from the allegations of the Amended Complaint as it is currently pled.

5. **Due Process**

Defendants argue that other than plaintiff's conclusory claim that plaintiff was denied due process (Amended Complaint [29], ¶1), he "fails to complain about either a procedural or substantive due process violation." Defendants' Memorandum of Law [40], p. 18. I agree, and recommend that this claim be dismissed.

6. **Deliberate Indifference**

Defendants argues that "[a]s the very exhibits plaintiff relies upon demonstrate, he was actually continued on Ultram and then weaned off of it. Thereafter, he was prescribed a non-prescription pain reliever with food. That he preferred a prescription narcotic at a higher dose does not make for a claim of constitutional dimension". Defendants' Memorandum of Law [40], p. 14. I disagree.

In order to establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs". Estelle v. Gamble, 429 U.S. 97, 104 (1976). The "deliberate indifference" standard has both objective and subjective components. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), cert. denied, 513 U.S. 1154 (1995). To satisfy the objective component, the alleged medical need must be "sufficiently serious." Id. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the

existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

To satisfy the subjective component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"[D]isagreements over treatment do not rise to the level of a Constitutional violation", Graham v. Gibson, 2007 WL 3541613, *5 (W.D.N.Y. 2007) (Siragusa, J.), as "[t]he Constitution does not require that an inmate receive a particular course of treatment". Tafari v. Stein, 2009 WL 331378, *7 (W.D.N.Y.), recon. denied, 2009 WL 1322317, 2009 WL 1579530 (W.D.N.Y. 2009) (Scott, M.J.). Consequently, "a prison doctor *who relies on his medical judgment* to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference." Williams v. Smith, 2009 WL 2431948, *9 (S.D.N.Y), recon. denied, 2009 WL 5103230 (S.D.N.Y. 2009) (emphasis added).

Accepting plaintiff's allegations as true for purposes of this motion, they plainly establish that defendants' decisions in discontinuing plaintiff's prior pain medications were not based on medical judgments. I also disagree that plaintiff's claims are belied by the medical records he attaches to his Amended Complaint. While these records demonstrate that he was weaned from Ultram (Amended Complaint [29], p. 32 of 43), they do not undermine his claim that this medication was ultimately discontinued in favor of Motrin, a medication plaintiff alleges defendants knew caused him "distress". Id., ¶37. Therefore, I recommend that this claim not be dismissed.

7. **Failure to Protect**

Defendants argue that "[w]hile such a claim generally arises in the context of an attack by another inmate, [they] assume that plaintiff's sweeping claim is based on the same medical indifference assertions". Defendants' Memorandum of Law [40], p. 19. Thus, they argue that "like the plaintiff's Eighth Amendment medical indifference claim, plaintiff's 'failure to protect' claim should be dismissed as well." Id. Defendants' Memorandum of Law [40], p. 19.

However, since I have recommended that plaintiff's deliberate indifference claim not be dismissed, I likewise recommend that plaintiff's failure to protect claim not be dismissed.

### 8. Personal Involvement

Defendants argue that there is insufficient personal involvement alleged to support the claims against Nurse Administrator Killinger, Superintendent Bradt, and Commissioner Fischer. Defendants' Memorandum of Law [40], pp. 19-20.[11]

Prior to Ashcroft v. Iqbal, 556 U.S. 662 (2009), it had been well settled that "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). However, in Iqbal, the Supreme Court clouded this issue when it rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution", concluding that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677.

Since Iqbal, some districts courts have determined that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable. *See e.g.*, Spear v. Hugles, 2009 WL 2176725, *2 (S.D.N.Y. 2009) ("only the first and third *Colon* factors have

---

[11] I have analyzed defendants' remaining arguments in light of the claims that I have recommended not be dismissed.

survived the Supreme Court's decision in *Iqbal*" ); Bellamy v. Mount Vernon Hospital, 2009 WL 1835939, *6 (S.D.N.Y. 2009), aff'd, 387 Fed. Appx. 55 (2d Cir. 2010) (Summary Order) ("The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*. *Iqbal's* active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal's* muster")[12]; Bryant v. County of Monroe, 2010 WL 4877799, *3 (W.D.N.Y.2010) (Siragusa, J.) ("The Court . . . is persuaded by the analysis of . . . *Iqbal* . . . in *Bellamy*").[13]

However, I agree "with the apparent majority view that where, as here, the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply." Shepherd v. Powers, 2012 WL 4477241, *10 (S.D.N.Y. 2012).

---

[12] "[T]he *Iqbal* issue was not raised on appeal" in Bellamy. Stresing v. Agostinoni, 2012 WL 2405240, *4 (W.D.N.Y. 2012) (Skretny, J).

[13] Adding to the uncertainty, "[t]he Second Circuit has not yet addressed which, if any, of the *Colon* categories survive *Iqbal*." Jamison v. Fischer, 2012 WL 4767173, *4 (S.D.N.Y. 2012). *See* Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal's* impact on *Colon* in this case").

### a. Nurse Administrator Killinger

Plaintiff alleges that on April 18, 201, he sent Nurse Administrator Killinger a letter complaining about the intentional interference with his pain medication. Amended Complaint [29], ¶101. The Amended Complaint attaches an April 19, 2011 response from Nurse Administrator Killinger stating "You are scheduled to see a medical clinician to assess your medical concerns". Id., p. 39 of 43.

"The law is clear . . . that a prison official's mere response to a grievance, by itself, is not sufficient to establish personal involvement for purposes of §1983." Hidalgo v. Kikendall, 2009 WL 2176334, *4 (S.D.N.Y. 2009). Nevertheless, "[a] supervisor's detailed, specific response to a plaintiff's complaint" may suffice to establish personal involvement. Mateo v. Fischer, 682 F.Supp.2d 423, 430–31 (S.D.N.Y. 2010); see Rosario v. Fischer, 2012 WL 4044901, *5 (S.D.N.Y.), adopted 2012 WL 6681695 (S.D.N.Y.2012) ("a pro forma response to a letter or grievance" does not amount to personal involvement); Brooks v. Chappius, 450 F.Supp.2d 220, 226 (W.D.N.Y.2006) (Larimer, J.) ("in general personal involvement will not be found unless 'the supervisor's response is detailed and specific'").

Nurse Administrator Killinger's generalized response to plaintiff's complaint is not sufficient to establish personal involvement. See Mateo, 682 F.Supp.2d at 430–31. Beyond this, plaintiff only generally alleges that Nurse Administrator Killinger was informed of the violation through "grievances, appeal, [and] letters". Amended Complaint [29], ¶115. However, "the naked assertion . . . that he complained to Defendants . . . that he was being deprived of reasonable and adequate . . . care . . . is simply too lacking in factual detail to show that Plaintiff is entitled to relief . . . . Plaintiff's Complaint contains absolutely no factual enhancement

regarding the manner in which complaints were conveyed to each of the defendants, the content of the complaints, the timing of the complaints, or the responses of each of those Defendants to those complaints." Jean-Laurent v. Lane, 2013 WL 600213, *16 (N.D.N.Y.), adopted 2013 WL 5999893 (N.D.N.Y. 2013).

Moreover, "where the personal involvement of a defendant in a Section 1983 violation is premised upon a claim of conspiracy, '[i]t is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.'" Vega v. Artus, 610 F.Supp.2d 185, 199 (N.D.N.Y. 2009), (*quoting* Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990)). Therefore, I recommend that the remaining deliberate indifference/failure to protect claims against Nurse Administrator Killinger be dismissed.

### b. Superintendent Bradt

Although the Amended Complaint [29] generally alleges that Superintendent Bradt was informed of the violations through "grievances[,] appeal[, and] letters" (Amended Complaint [29], ¶132), the only specific communication identified is Superintendent Bradt's January 6, 2011 denial of plaintiff's grievance concerning the termination of his pain medication. Id., ¶135, p. 41 of 43. However, "[t]he fact that [the] Superintendent . . . affirmed the denial of plaintiff's grievance - which is all that is alleged against him - is insufficient to establish personal involvement". Joyner v. Greiner, 195 F.Supp.2d 500, 506 (S.D.N.Y. 2002). *See* Ramos v. Wright, 2011 WL 2462482, *6 (N.D.N.Y. 2011), adopted 2011 WL 2462472 (N.D.N.Y. 2011) (dismissing claims against superintendent on personal involvement grounds where "[p]laintiff's

sole factual allegation against Defendant Superintendent Smith, [was] that he affirmed the resolution of Plaintiff's institutional grievance and indicated that Plaintiff was receiving adequate medical attention"); Henry v. Lempke, 680 F.Supp.2d 461, 464 (W.D.N.Y. 2010) (Larimer, J.) ("To the extent that [Superintendent] Lempke may have, in the course of his official duties, denied or affirmed the denial of certain grievances filed by the plaintiff, 'the denial of [a] plaintiff's grievance - [where that] is all that is alleged against him - is insufficient to establish personal involvement [in a constitutional violation]' by a prison superintendent"); Ramsey v. Goord, 2005 WL 2000144, *8 (W.D.N.Y. 2005) (Skretny, J.) ("the fact that a prison official in the prison chain of command affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official"); Vogelfang v. Capra, 2012 WL 832440, *7 (S.D.N.Y. 2012) ("an officer tasked only with reviewing an administrative determination is not 'personally involved' even if the underlying determination implicates a plaintiff's constitutional rights"); White v. Sears, 2011 WL 2728443, *8 (N.D.N.Y. 2011), adopted 2011 WL 2728431 (N.D.N.Y. 2011) ("To the extent that Superintendent Sears is named as a defendant because he denied Plaintiff's grievance, the denial of Plaintiff's grievance is insufficient to establish personal involvement").[14] Therefore, I recommend that the remaining deliberate indifference/failure to protect claims against Superintendent Bradt be dismissed.

---

[14] *Compare with* McKenna v. Wright, 386 F.3d 432, 437-38 (2d Cir. 2004) ("Although it is questionable whether an adjudicator's rejection of an administrative grievance would make [the defendant deputy superintendent for administration] liable for the conduct complained of", where the defendant was responsible for the prison's medical program and "allegations of improperly denied medical treatment come to [his] attention . . ., his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility").

### c. Commissioner Fischer

Without identifying any specific grievances, plaintiff alleges that he "sent grievances" to Commissioner Fischer. Amended Complaint [29], ¶138. However, there is no allegation that Commissioner Fischer ever responded to these grievances. "The law is clear . . . that a prison official's mere response to a grievance, by itself, is not sufficient to establish personal involvement for purposes of §1983." Hidalgo v. Kikendall, 2009 WL 2176334, *4 (S.D.N.Y. 2009). Thus, "[t]he receipt of a prisoner's letter of grievance by a DOCS Commissioner who delegates to other prison officials the task of responding to such complaints is insufficient to establish the Commissioner's personal involvement." Spavone v. Fischer, 2012 WL 360289, *5 (S.D.N.Y. 2012). Therefore, I recommend that the remaining deliberate indifference/failure to protect claims against Commissioner Fischer be dismissed.

### 9. Official Capacity Claims

Defendants argue that plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. I agree. *See* Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989) (holding that neither the state, its agencies, nor its employees acting in their official capacities are "persons" subject to suit under 42 U.S.C. §1983). Therefore, I recommend that defendants' motion be granted to the extent it seeks dismissal of plaintiff's official capacity claims.

### 10. Qualified Immunity

Defendants argue that they are entitled to qualified immunity "[g]iven that the . . . Eighth Amendment is not violated when an inmate does no receive medication of his choosing . . . , defendants had every reason to believe their actions were lawful." Defendants' Memorandum of Law [40], p. 22. I disagree.

Under the qualified immunity doctrine "a defendant is not liable if he did not violate clearly established law or it was objectively reasonable for him to believe that he was not violating clearly established law." Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004). "Thus, government officials are entitled to qualified immunity at the dismissal stage only where it appears on the face of a plaintiff's complaint that they did not violate clearly established rights of which they should have known." Richardson v. Department of Corrections of N.Y.S., 2011 WL 4091491, *4 (S.D.N.Y. 2011), recon. denied, 2012 WL 76910 (S.D.N.Y. 2012). "Usually, the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983). This case is no different.

It is undisputed that the right to be free from deliberate indifference to serious medical needs was clearly established throughout the period of the alleged deliberate indifference. "At this early procedural juncture, accepting plaintiff's allegations as true and drawing all inferences in his favor, I am unable to say that it was objectively reasonable for the defendants to conclude that their actions did not violate plaintiff's clearly established right to be free from deliberate medical indifference." Taylor v. Goord, 2010 WL 3825661, *11 (N.D.N.Y.),

adopted, 2010 WL 3825656 (N.D.N.Y. 2010). See Briel v. Fields, 2013 WL 1833248, *4 (E.D.N.Y. 2013).

**B.      Motion to Stay**

Defendants move to stay all proceedings until resolution of their motion to dismiss. Defendants' Notice of Motion [39]. Although there appears to have been no proceedings in this action since the filing of defendants' motion to dismiss, to the extent plaintiff seeks to move forward with discovery while any objections to this Report, Recommendation and Order are pending, a stay is granted.

**CONCLUSION**

For these reasons, defendants' motion [39] is granted to the extent it seeks a stay, and I recommend that their motion to dismiss the Amended Complaint be denied to the extent it seeks to dismiss the deliberate indifference/failure to protect claims against defendants Schunh, Dr. Evans, Dr. Rao and Dr. Kowski, in their individual capacities, but otherwise be granted.

Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation, and Order must be filed with the clerk of this court by October 7, 2013 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 19, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge